**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

In Re:

**Settlement Facility Dow Corning Trust,**

**Case No. 07-CV-14898**

**Dale Reardon,**                                **Honorable Denise Page Hood**

         **Appellant.**

_____/

## MEMORANDUM OPINION AND ORDER

**I.    BACKGROUND**

Claimant Dale Reardon is a rupture claimant before the Settlement Facility–Dow Corning Trust ("SF-DCT") pursuant to the Amended Joint Plan of Reorganization ("Plan") in the Dow Corning Corporation ("Dow Corning") bankruptcy action. Ms. Reardorn received implants manufactured by Dow Corning on September 6, 1973. Ms. Reardon's implants were removed on November 13, 2003. Ms. Reardon submitted a rupture claim to the SF-DCT on December 27, 2006. On February 21, 2007, the SF-DCT denied Ms. Reardon's rupture claim because the claim was submitted after the June 1, 2006 deadline for submitting rupture claims. Ms. Reardon eventually appealed the SF-DCT decision to the Appeals Judge. The Appeals Judge affirmed the Claims Administrator's decision on October 24, 2007. (Reardon Appeal Ex.) On November 14, 2007, Ms. Reardon, through counsel, submitted an Appeal from the Appeals Judge's decision.

On January 28, 2008, Dow Corning filed the instant Motion to Dismiss the Appeal pursuant to the Settlement Facility and Fund Distribution Agreement ("SFA"), Annex A, Section 8.05 and Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). A response to the motion and a reply to the response have been filed.

## II. ANALYSIS

Ms. Reardon seeks a review of the Appeals Judge's decision that the rupture claim was untimely submitted arguing that Ms. Reardon's rupture claim should be considered based upon counsel's excusable neglect regarding the untimely submission of the rupture claim. Dow Corning argues that the Court cannot modify the Plan without consent of the parties. Dow Corning further argues that although the excusable neglect operates to extend deadlines established by the bankruptcy rules or the court, the standard is not applicable to a claim submission deadline established by the express terms of the confirmed Plan. Even if the standard applied, Dow Corning argues that the failure of Ms. Reardon's counsel to file a timely claim does not support a finding of excusable neglect.

Section 8.7 Amended Plan of Reorganization states that this Court retains jurisdiction to resolve controversies and disputes regarding the interpretation and implementation of the Plan and the Plan Documents, including the SFA, and, to enter orders regarding the Plan and Plan Documents. (Plan, §§ 8.7.3, 8.7.4, 8.7.5) The Plan provides for the establishment of the SF-DCT, which is governed by the SFA. (Plan, § 1.131) The SF-DCT was established to resolve Settling Personal Injury Claims in accordance with the Plan. (Plan, § 2.01) The SFA and Annex A to the SFA establish the exclusive criteria by which such claims are evaluated, liquidated, allowed and paid. (SFA, § 5.01) Resolution of the claims are governed by the SFA and corresponding claims resolution procedures in Annex A. (SFA, § 4.01)

The Plan establishes administrative claim review and appeals processes for Settling Personal Injury claimants. Any claimant who does not agree with the decision of the SF-DCT may seek review of the claim through the error correction and appeal process. (SFA, Annex A, Art. 8) A

2

claimant may thereafter obtain review by the Appeals Judge. (SFA, Annex A, Art. 8) The Plan provides that "[t]he decision of the Appeals Judge will be final and binding on the Claimant." (SFA, Annex A, § 8.05) Claimants who seek review under the Individual Review Process also have a right to appeal directly to the Appeals Judge. The Plan provides that "[t]he decision of the Appeals Judge is final and binding on both Reorganized Dow Corning and the claimant." (SFA, Annex A, § 6.02(vi))

The Plan provides no right to appeal to the Court in this instance and expressly sets forth that the decision of the Appeals Judge is final and binding on both the Reorganized Dow Corning and the claimants. Allowing the appeal to go forward and directing the Claims Administrator to pay the rupture claim would be a modification of the Plan language. Generally, the provisions of a confirmed plan bind the debtor and any creditor. 11 U.S.C. § 1141(a); *In re Adkins,* 425 F.3d 296, 302 (6th Cir. 2005). Section 1127(b) is the sole means for modification of a confirmed plan which provides that the proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of the plan. 11 U.S.C. § 1127(b).

"In interpreting a confirmed plan courts use contract principles, since the plan is effectively a new contract between the debtor and its creditors." *In re Dow Corning Corporation,* 456 F.3d 668, 676 (6th Cir. 2006); 11 U.S.C. § 1141(a). "An agreed order, like a consent decree, is in the nature of a contract, and the interpretation of its terms presents a question of contract interpretation." *City of Covington v. Covington Landing, Ltd. P'ship,* 71 F.3d 1221, 1227 (6th Cir. 1995). A court construing an order consistent with the parties' agreement does not exceed its power. *Id.* at 1228.

The Plan's language is clear and unambiguous that the decision of the Appeals Judge is final

3

and binding on the claimants and the Reorganized Dow Corning. The Court has no authority to modify this language. Although bankruptcy courts have broad equitable powers that extend to approving plans of reorganization, these equitable powers are limited by the role of the bankruptcy court, which is to "guide the division of a pie that is too small to allow each creditor to get the slice for which he originally contracted." *In re Dow Corning,* 456 F.3d at 677-78 (quoting *In re Chicago,* 791 F.2d 524, 528 (7th Cir.1986)). "A bankruptcy court's exercise of its equitable powers is cabined by the provisions of the Bankruptcy Code." *Id.* at 678 (citing *In re Highland Superstores, Inc.,* 154 F.3d 573, 578-79 (6th Cir.1998)). The Court cannot consider Ms. Reardon's request to review the Appeals Judge's decision denying her claim.

Even if the Court had the authority to review the Appeals Judge's decision, the Court finds that Ms. Reardon's counsel has not shown excusable neglect in failing to timely submit the claim form. The Supreme Court in addressing a late claim filed beyond the deadline set forth in Bankr. R. 3003 used the "excusable neglect" standard under Fed. R. Civ. P. Rule 60(b)(1) to determine whether the Bankruptcy Court had the authority to enlarge time limitations under Bankr. R. 9006(b), which is patterned after Fed. R. Civ. P. 6(b). The Supreme Court approved the following factors that a court may consider in finding excusable neglect: 1) the danger of prejudice to the debtor; 2) the length of the delay and its potential impact on judicial proceedings; 3) the reason for the delay, including whether it was within the reasonable control of the movant; and, 4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 395 (1993). However, the Supreme Court disapproved the allowance of a late claim based on the omissions of an attorney. *Id.* at 396. The Supreme Court noted that "clients must be held accountable for the acts and omissions of their attorneys." *Id.* at 396. A client, having chosen a

4

particular attorney to represent him in a proceeding, cannot "avoid the consequences of the acts or omissions of this freely selected agent," and that "[a]ny other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Id.* at 397. In assessing a claim of excusable neglect, "the proper focus is upon whether the neglect of [the parties] *and their counsel* was excusable." *Id.* (emphasis in original). In applying the Supreme Court's analysis, the Sixth Circuit has noted that it may be excusable for a client to rely on the advice of counsel, however, action or inaction by counsel that leads to successful malpractice suits by the injured client do not qualify as a mistake or excusable neglect under Rule 60(b)(1) and that failure to verify the requirements of the law demonstrates attorney malpractice, not excusable neglect. *McMurry v. Adventist Health System/Sunbelt, Inc.,* 298 F.3d 586, 595 (6th Cir. 2002) (quotations and citations omitted).

In addressing the factors set forth by the Supreme Court, the Court finds that allowing this *one* claim to proceed against the SF-DCT would not greatly prejudice the assets under the Plan. However, there is merit to Dow Corning's argument that the relief sought would result in disparate treatment of other claimants who timely submitted their rupture claims. Dow Corning noted that allowing 50 untimely rupture claims to proceed would result in substantial cost in terms of claim payments and administrative expense. Dow Corning estimates that if 50 claims were approved, the compensation, including Premium Payments, and administrative costs would total $1.25 million. Dow Corning argues that the outcome would prejudice not only Dow Corning but also the timely claimants whose payments could be compromised by allowing late claims, based upon the Premium Payments determination which has yet to be determined.

5

Allowing Ms. Reardon's rupture claim to go forward will not further delay the administration of the Plan since claims are currently being considered by the SF-DCT. However, allowing other late rupture claims could further delay the administration of the Plan.

There has been no showing of bad faith on behalf of Ms. Reardon and her counsel.

As to the reason for the untimely submission of the rupture claim, based on the Sixth Circuit's interpretation of excusable neglect noted above, the failure of Ms. Reardon's counsel (former or current counsel) to verify the requirements of the Plan and the Plan Documents regarding the time to submit the rupture claim does not constitute excusable neglect. There is no dispute that Ms. Reardon filed a Disease Compensation Program Claim Form dated September 13, 1994 and that she also filed a Preliminary Claim Form dated May 24, 1995. It was not until December 27, 2006 when Ms. Reardon's current counsel filed all proof of claims with the SF-DCT for explant, rupture and ACTD claims. Ms. Reardon's counsel received a letter dated February 21, 2007 from the SF-DCT stating that the deadline had expired for Ms. Reardon's rupture claim. Ms. Reardon's counsel indicates that receipt of the letter specifying the date of June 1, 2006 as the rupture claim filing deadline cannot be confirmed. Counsel argues that the review of the deadlines set forth in the Plan is exceptionally short as to the rupture claim two-year deadline from the Effective Date as compared to the disease claim deadline of 15 years after the Effective Date. Counsel admits that he inadvertently failed to note that the deadline for filing the rupture claims was exceptionally short at two years compared to the 15-year deadline for filing disease claims. Counsel claims the deadlines, including the rupture claim deadlines, were vague at best since the "Effective Date" was based upon a future occurrence.

As previously noted, the deadlines set forth in the Plan cannot be modified by the Court and

the Plan is binding upon the Debtor, creditors and claimants. Unless the action of the moving party has been delayed by an outside force, there will generally be no cause to apply equitable tolling principles. *In the Matter of Hambright,* 216 B.R. 781, 783 (W.D. Mich. 1997). Dow Corning has submitted various exhibits to support its claim that sufficient notice was published and individually sent to claimants regarding the various deadlines, including the rupture claim deadline of June 1, 2006. The SF-DCT posted the deadline on its website and the SF-DCT mailed to all claimants' attorneys of record a newsletter advising that the Plan was effective and noting the specific calendar dates of all filing deadlines. (Ex. A to Dow Corning's Br.) The SF-DCT mailed to claimants' counsel a notice of a claimant information meeting on August 26, 2005, which included the deadline information for all claims, including the rupture filing deadline. (Ex. B to Dow Corning's Br.) The SF-DCT mailed a letter to all counsel for claimants who had not filed a rupture claim reminding them that the rupture filing deadline was June 1, 2006. (Ex. C to Dow Corning's Br.) Ms. Reardon's implants were removed on November 13, 2003, but she waited until December 2006 to submit her claims. Ms. Reardon was aware prior to the June 1, 2006 date that she had Dow Corning implants. Although the term "Effective Date" was not set when the Plan was confirmed, it was clear from the Plan documents that such a date would later be established after various events had taken place. After the Effective Date of June 1, 2004 was set, the SF-DCT, the Claimants' Advisory Committee, Dow Corning and the Court made great efforts to notify the claimants and the public of the Effective Date. As to Ms. Reardon's claim that the two-year rupture claim deadline was short, the deadline was subject to extensive negotiations by the parties, was eventually approved by the claimants voting on the Plan, and is double the period set forth in the MDL-926 Revised Settlement Program, which occurred prior to the rupture deadline before the SF-DCT. While it is most

unfortunate and regrettable that Ms. Reardon's rupture claim cannot be reviewed by the SF-DCT, counsel's failure to inadvertently meet the deadline to file a rupture claim does not constitute excusable neglect.

Accordingly,

IT IS ORDERED that Dow Corning's Motion to Dismiss the Appeal from the Appeals Judge's decision **(Doc. No. 2, 1/28/2008)** is GRANTED.

IT IS FURTHER ORDERED that this matter is DISMISSED with prejudice.

                                                    */s/ Denise Page Hood*
                                                    DENISE PAGE HOOD
                                                    United States District Judge

DATED: September 30, 2008

_____

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on this date, September 30, 2008, by electronic means and/or first class U.S. mail.

                                                    S/Sakne Srour
                                                    Deputy Clerk